UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **Brandi Leigh Barger,** | ) | 09-51299 |
| | ) | |
| Debtor. | ) | |
| | ) | |

### ORDER AND OPINION DENYING MOTION TO DISMISS

THIS MATTER came on for hearing on April 26, 2010, after due and proper notice, upon the Motion by the Bankruptcy Administrator to Dismiss Case pursuant to § 707(b)(3). Appearing before the court was Robert F. McLaughlin, counsel for the Debtor, and Robert E. Price, Jr., counsel for the Bankruptcy Administrator. After consideration of the motion and other matters of record, the court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure:

### FACTS

Most of the relevant facts are not in dispute.  The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on June 29, 2009 (the "Petition Date").  The Debtor is a registered nurse and has been employed as a labor and delivery nurse by Rowan Regional Medical Center since August 2004.  Her gross income is approximately $5,000.00 per month but fluctuates due to variations in hours and overtime.  The Debtor's B22A reflects above-median income of $5,813.51 per month and expenses of $5,916.71 per month; therefore, there is no presumption of abuse in this case.  On the Petition Date, the Debtor filed a Schedule I showing gross income of $4,108.00 and net income of $2,439.00.  Her Schedule I income was significantly less than her B22A income due to a change in the policy regarding overtime at her

place of employment. Since the Petition Date, the Debtor has filed two updated Schedule I's: the first on December 10, 2009, reflecting gross income of $4,946.00 and net income of $2,893.00, and the second on April 22, 2010, reflecting gross income of $5,246.00 and net income of $3,066.00. On her 2009 federal tax return, the Debtor reported gross income for the year in the amount of $58,338.00, which equals $4,861.50 per month. The Debtor received tax refunds in excess of $3,000.00 for both 2008 and 2009, with the 2009 refund being slightly higher as a result of the one-time "Making Work Pay" tax credit in the amount of $400.00.

The Debtor owns a home with a value of $105,000.00. The home is fully encumbered by three mortgages. On the Petition, the Debtor listed a 2009 Chevrolet Tahoe, a 2009 Harley Davidson, and a 2003 Chevrolet Tahoe. Prior to filing, the 2003 Chevrolet Tahoe was the Debtor's primary vehicle. On the Petition Date the Debtor was current on payments for that vehicle. The Debtor purchased both the 2009 Chevrolet Tahoe and the 2009 Harley Davidson for Robert Osland, a man with whom she was in a relationship at the time and who was unable to obtain credit individually. The Debtor expected Mr. Osland to make the monthly payments on those vehicles. The Debtor has never made any payments on those vehicles, and on the Petition Date, neither of those vehicles were in the Debtor's possession. The Debtor has surrendered her interest in all three vehicles.

The Debtor has approximately $50,000.00 in unsecured debt, not including anticipated deficiency claims related to the vehicles. The Debtor stopped utilizing credit cards and participated in a debt consolidation program for a period seven months prior to filing. The Debtor has a non-dischargeable student loan debt in the amount of approximately $20,000.00 and a small 401(k) loan for funds she used to obtain bankruptcy counsel.

**DISCUSSION**

The Bankruptcy Administrator contends that this case should be dismissed pursuant to § 707(b) as it is a case filed by a debtor whose debts are primarily consumer debts and the granting of relief would be an abuse of the provisions of Chapter 7 of the Bankruptcy Code.  11. U.S.C. § 707(b)(1).  Since there is no presumption of abuse in this case, the Bankruptcy Administrator moves for dismissal under § 707(b)(3).  Section 707(b)(3) provides that in a case in which no presumption of abuse arises, the court must consider whether the debtor filed the petition in bad faith or whether the totality of the circumstances of the debtor's financial situation demonstrates abuse.  11 U.S.C. § 707(b)(3).  The Bankruptcy Administrator has the burden of proving abuse pursuant to § 707(b)(3).  *In re Lipford*, 397 B.R. 320, 326 (Bankr. M.D.N.C. 2008).

Prior to the enactment of BAPCA, the Fourth Circuit had adopted a "totality of the circumstances" analysis for substantial abuse under the pre-BAPCA § 707(b).  *In re Green,* 934 F.2d 568, 572 (4th Cir. 1991).  This analysis remains informative as to what constitutes abuse under the totality of the circumstances test of § 707(b)(3).  *In re Martin*, 417 B.R. 354, 358 (Bankr. M.D.N.C. 2009).  The court should consider whether the debtor has the ability to repay creditors, as well as whether: (1) the filing was precipitated by a sudden illness, calamity, or unemployment; (2) the debtor made consumer purchases in excess of his or her ability to pay; (3) the debtor's budget is excessive or unreasonable; (4) the debtor's schedules and statements accurately reflect the true financial condition; (5) the petition was filed in good faith.  *In re Green,* 934 F.2d at 572.

In the present case, the parties agree that the Debtor's debts are primarily consumer debts, the filing was not precipitated by a sudden illness, calamity, or unemployment, the Debtor

3

made consumer purchases in excess of her ability to pay, and the Debtor's schedules and statements accurately reflect her true financial condition.  The Bankruptcy Administrator concedes that there is no evidence of a subjective lack of good faith.  While the Debtor clearly made some irresponsible financial decisions while she was in a relationship with Mr. Osland, the court finds that the petition was filed in good faith.

Thus, the only issues in dispute are whether the Debtor's budget is excessive or unreasonable and whether the Debtor has the ability to repay creditors.  First, the Bankruptcy Administrator argues that three of the Debtor's expenses could be trimmed to a degree.  The Debtor's monthly budget includes clothing at $200.00, food at $350.00, and utilities as $257.00.  The Debtor's clothing budget includes her uniforms and work shoes.  Pointing to the IRS standards, the Bankruptcy Administrator contends that the Debtor's clothing expense should be $86.00 per month, her food allowance should be $293.00 per month, and her monthly utilities should total $150.00.  While the court appreciates that the IRS standards might provide guidance regarding the reasonableness of an expense, simply the fact that certain items on the Debtor's budget do not equal the IRS standards does not make those items excessive or unreasonable.  *See In re Seeburger*, 392 B.R. 735, 742 (Bankr. N.D. Ohio 2008) ("The UST cites no authority for, and the court finds no basis for accepting, his first calculation based on simply substituting on a nearly wholesale basis Debtors' actual expense amounts for the IRS allowances under the means test. The IRS allowances applicable under the means test set forth in § 707(b)(2) are not determinative in a § 707(b)(3) analysis.") (citation omitted).  The court has reviewed the Debtor's expenses and finds that the Debtor's current household budget totaling $2,884.00 per

month is neither excessive nor unreasonable.[1]

In support of the assertion that the Debtor has the ability to pay, the Bankruptcy Administrator points to the Debtor's most recent amended Schedule J, which reflects net income of $182.00 per month, and the Debtor's tax refunds in excess of $3,000.00, and argues that the Debtor has a total of approximately $432.00 per month in disposable income. After careful consideration of the evidence presented, the court finds that the Debtor does not have the ability to pay a meaningful amount to her unsecured creditors in a hypothetical Chapter 13 plan. The primary reason that the Debtor currently appears to have excess income is the absence of a car payment from her budget. In an attempt to do everything she could to obtain a true "fresh start," the Debtor released her vehicle and is now borrowing a 1999 Jeep Cherokee from her parents. The burden is on the Bankruptcy Administrator to prove that granting the Debtor relief in this case would be an abuse of the provisions of Chapter 7. As such, the court will not, in essence, penalize the Debtor for releasing the 2003 Chevrolet Tahoe, a vehicle for which she was current on payments prepetition and which she could have retained and then included the corresponding payments in her budget. *See In re Fitzgerald,* 418 B.R. 778 (Bankr. D. Conn. 2009) (considering expenses postponed due to financial problems, including dental work and automobile repairs, when assessing debtor's ability to pay); *In re Wright*, 364 B.R. 640 (Bankr. N.D. Ohio 2007)

---

[1] The Bankruptcy Administrator has singled out individual expenses in an attempt to compare the Debtor's budget with the IRS standards; however, the Debtor's overall budget is generally in line with the IRS standards. The IRS housing and utilities standards for Rowan County total $1,041.00. The Debtor's utilities and housing expenses total only $1,015.00. The IRS standards for food, $293.00, and housekeeping supplies, $28.00, total $321.00. The Debtor's housekeeping supplies are included in her food budget of $350.00. The Debtor's clothing expense is slightly higher than the IRS standards, but as a nurse working in labor and delivery, it is not unreasonable for her to maintain a regular supply of work uniforms and shoes.

(finding that while the debtor surrendered his home and vehicle and was no longer required to service those obligations, he was entitled to allocate a reasonable amount toward those expenses in his budget).  The court has no doubt that the Debtor will have to replace the borrowed 1999 Jeep Cherokee in the near future.  The $432.00 that the Debtor appears to have in disposable income is a reasonable amount for a vehicle payment.  Lastly, the Debtor testified that during the past few months her income has been slightly higher due to three vacancies at her place of employment.  Her pay advices and amended schedules are consistent with this testimony.  The Debtor anticipates those positions to be filled shortly and her hours to be reduced accordingly.

      The parties agree that the facts here present a "close" case.  The court agrees and finds in favor of the Debtor.  The Debtor filed her petition in good faith with accurate and comprehensive schedules, and she has frequently provided updated information. At the time of filing, she made the difficult choice to release all property that served as collateral except for a modest home.  Her expenses are reasonable and the Debtor does not have the ability to pay a meaningful dividend to unsecured creditors.  For all these reasons, the court cannot find that the Bankruptcy Administrator has met his burden under the totality of the circumstances standard of § 707(b)(3).

      IT IS SO ORDERED.

## SERVICE LIST

Brandi Leigh Barger
Debtor

Robert McLaughlin
Attorney for Debtor

Michael D. West
U.S. Bankruptcy Administrator

W. Joseph Burns
Trustee